May it please the Court, my name is Douglas D. Nelson on behalf of the Petitioner for the Government Council, and my question to the Government Council is, to what country do they believe they can deport the Petitioner? The Petitioner has already been found by a panel of legal experts at the Board of Immigration Appeals, that he has a well-founded fear of returning to Lebanon, because the Syrian military said that he should spy for them and he refused to do so. So for the Government to take the position that the Petitioner should be ordered deported to Lebanon, flies in the face of all refugee and asylum law. We are supposed to protect these persons. Now of course the Board's order has no legal effect because it lost jurisdiction to make that decision, and when the Board made that decision it did not know that the Petitioner had departed the United States. But the facts are still the facts, and the Government cannot dispute the fact that the Board found he had a well-founded fear of returning to his country. We believe the solution in this case is rather simple. The Board's order... Did the VIA ever consider his claim about his fears about returning to Lebanon? Yes, Your Honor. In fact, in his first appeal, they found two strange findings. I mean they simply don't go together. First they found that he deserved a new full and fair hearing because there were translation problems, but they also had an alternate order granting or finding the Petitioner deserving of asylum because he had a well-founded fear of return. But of course that has no legal effect because in our opinion they did not have jurisdiction to make that finding. Was any written notice given to Delbany that the 1994 order would be reinstated? That what would be reinstated, Your Honor? The 1994 order of deportation would be reinstated. No. The judge's order was simple. The immigration judge's order was, I grant you four months of voluntary departure, and in the alternate, if you don't comply with the voluntary departure, you will be ordered deported. Now, we know as legal professionals that the voluntary departure is automatically told during dependency of an appeal with the Board of Immigration Appeals. But for the Petitioner to know that, being a layperson, I think is beyond him. But it's something common among practitioners. And in fact, that's our position, that the voluntary departure order was automatically told by virtue of filing the appeal, and that it existed throughout the appeal. Now the government's position is that after the judge's order, four months expired during the appeal, and that the Petitioner lost his voluntary departure, his privilege of voluntary departure, that that privilege disappears until the Board issues an order granting relief for remaining in the case or granting another period of voluntary departure. Our position is that that voluntary departure, which was told, did not disappear. In fact, for it to disappear flies in the face of the definition of what tolling means. The voluntary departure order existed throughout the appeal. And when he left, he was still under that voluntary tolling. If an alien files a non-meritorious appeal solely for the sake of extending his time here, then that is obviously in violation of the law, and they're not entitled to the privilege of voluntary departure. But in this case, the Petitioner had a meritorious appeal, as evidenced by the fact that the Board granted his appeal. The unfortunate fact is that he had left the country in the interim, and that was his mistake. But what the law says is that that was a voluntary departure. Now he re-entered the United States illegally. Those former proceedings are done with, and everything, nearly everything that's been done since then, has no legal effect. What the Board, or what we want from the government is for the Department of Homeland Security to issue a new notice to appear, based upon his last illegal entry. That would afford him a full, fair, and new hearing on his asylum claim. That would also afford him an opportunity to present his adjustment of status application. But of course, this court does not have the authority to order the Department of Homeland Security to issue a notice to appear. But it is our position that by merely finding, that if this court merely finds that he voluntarily departed, then by operation of law, his new entry will trigger a new notice to appear, and he will be allowed to pursue those claims of relief. Are you familiar with Section 1241.8 of the Code? You'll have to remind me. Well, under that section it says, if an alien whose prior order of removal has been reinstated under this section, which seems to be Del Bonnie's situation, if he expresses a fear of returning to the country designated in that order, the alien shall be immediately referred to an asylum officer for an interview to determine whether the alien has a reasonable fear of persecution or torture pursuant to Section 1208.31 of this chapter. Has that been followed in this case? No, it has not. And I think it does apply. We, of course, would dispute that he was... Why didn't you bring that up earlier? I asked you a question about it. I'm sorry, Your Honor. I said, why didn't you focus in on that issue? Well, we need the government's cooperation in that fact. And anecdotally, I can tell the court that we have asked the government to issue... But the government has an obligation, statutory obligation, to do this, if it's going to reinstate a prior order of removal. All it's asking you is if the government followed its own regulations. In my opinion, no, they have not. Well, they either did or didn't. It's not a matter of opinion. They have not. Because since his last entry, he has not been afforded an opportunity to present his claim to any asylum officer. Yeah, well, I asked you that question earlier. I'm sorry, Your Honor. Okay, you want to save three minutes of your time? Yes, Your Honor. And also, to finish the point that you brought up, it is our opinion that he was an order removed, that he voluntarily departed. So, in fact, that trigger doesn't necessarily kick in. I think the appropriate trigger is for the government to file a new notice to appear. So, there's no reinstatement of removal in this case. Well, you may go ahead, sir. Thank you. May it please the Court, my name is Rebecca Nybrook. I'm appearing on behalf of the Attorney General in this case. This case has made a long journey to get here. But unfortunately, its tools are not going to be completed today. Life is a long journey. I agree with that as well. And this case has a small life of its own at this point. It's been going on, I think, for 14 years. But regardless of what the Court decides today, its journey is not completed. For that reason, this case is not ripe for decision today. Second, why is its journey not completed? Because no matter what the Court decides today, if the Court decides its voluntary departure, if the Court decides that its a self-deportation, it doesn't matter. DHS still has to take action. Your point about the reinstatement in 1241.8 is well taken. Well, how come it hasn't done it so far then? Because nothing's been reinstated. And that's exactly the point of why this case is not ripe. DHS is not ripe today. Before, what did you say? Nothing's been reinstated. Nothing's been reinstated. Okay. And that's why this case is not ripe for decision today. DHS has one of two options available to it under either theory. Either if he voluntarily departed or if he self-deported. In either case, DHS may reinstate the prior removal order or it may issue a new notice to appear. It's done nothing here yet. So it doesn't matter what this Court says. DHS still has to take some sort of action. And until DHS takes that action, there's nothing to determine. So what's the consequence of all that? The consequence of which part, Your Honor? DHS not taking the action. There's no consequence. DHS floats along, is that it, for another 14 years? I sincerely doubt it will take DHS to act upon this case within 14 years. I do believe they're waiting for the outcome of this case. They don't want to take some sort of action they would have to go back to, which is, in some respects, how there are so many problems and detours in the procedural history of this case. Do you agree, though, that there's an obligation before reinstatement that there would be an obligation, that line of questioning? That is absolutely in the regulations. If it were to be reinstated, he would have the opportunity to raise any sort of claims of persecution, raise anything that is available to him under reinstatement. That's simply the point here is that there's nothing for this Court to act upon because DHS hasn't taken the necessary action. Once it's either removed, then some sort of action will be taken. If he's ordered removed, I'm sure we'll be back here. So what is it that you disagree about? I believe that we disagree whether this case should even be before the Court is, I think, the main issue. There's a theme going on between yesterday and today. Yes, it's very odd. I mean, the one question that is raised by Petitioner's Counsel is whether he voluntarily departed or whether he self-deported, and we assert that it doesn't matter. So the BIA has not issued a reinstatement order? That's correct. We are floating in limbo land at this point, Your Honor. What order is being appealed? That's also an interesting question that was the subject of debate in our office because to some extent that 2004 BIA decision, which purportedly would be the order appealed from, was more of an advisory opinion anyway because the Board didn't have jurisdiction. They lost jurisdiction over everything when he departed. I don't understand it because the order says the respondent is ordered deported to Lebanon. Yes. The best way I can describe that is they were responding to a motion to reopen that was premised upon that Board decision in 2000. This Board decision also says, as a previously deported alien who illegally reentered the United States, the respondent's original order of deportation must be reinstated. Accordingly, the DHS may deport the respondent without the issuance of a new notice to appear and without a hearing, which is absolutely wrong. So I guess we should... In some respects, I agree with you it must be taken as an incorrect decision. That's why we characterize it as an advisory opinion because it says the reinstatement notice must be issued, not that this order does that. He's ordered deported and the things ordered reinstated. That's what it says. So I guess what we should do is grant the petition and remand for a new hearing on whether he has a credible fear of returning to Lebanon. I don't believe that that's what... How else do we get rid of this? You're saying it's wrong. We've got thousands of these cases. We know better than anyone, Your Honor. Through the courtesy of the Attorney General. Two back. Well, the question that was presented by Petitioner's Counsel to us is whether he voluntarily departed or he self-deported. That's the only question here. That's the only question that's been presented to this Court. What does that really decide? And that's exactly our point. If we agree with you that it doesn't really matter, we're still left with an order that says he's supposed to be deported to Lebanon. We're left with a lawyer before us for the government who says, no, he's not going to be deported to Lebanon. He is either going to be... The order's going to be reinstated or he's going to have a notice to appear. But in any event, he's going to be interviewed by an asylum officer so that he can answer questions. It seems to be that five of us here are all in agreement about where this case is going to go. And the question is, what do we need to do to make that happen? And I agree with Judge Wardlaw. It seems to me that the thing to do is to reverse the order that we believe, everybody I think believe has some error in it, and proceed with the interview either based on a notice to appear or reinstatement and get about the business of finding out whether or not this gentleman is entitled to asylum. And we would submit that reversing this board decision or sending it back to the board at this point isn't going to accomplish anything. What needs to happen is DHS to take some sort of action to reinstate the language in the board. Wait another 14 years for DHS to do something. I mean, we have this right before us right now. We can do something now. And actually, I think that granting the petition would actually make this case more confused in some respects because this is an advisory opinion. DHS says this must be reinstated. They didn't say, we are now reinstating. It was issuing an advisory opinion as what needed to be done next based on their opinion that he had not voluntarily departed, that he had self-deported instead. So we're supposed to accept your representation and trust us nothing's going to happen. He's not going to be deported. We're not going to get a letter later that says, oops, he's gone. The government's going to, in the fullness of time, decide when and where to either reinstate or issue a notice to appear. Your Honor, if it would make you feel better, I'm happy to contact DHS and to try and move the process along. I don't know how much my phone call is going to help that matter, but I'm perfectly willing to make sure that this doesn't take 14 years to get to this court again if everything doesn't go Mr. Delvani's way below. However, it does need to come from DHS. It does need to either be a new notice to appear or a notice of reinstatement. And Petitioner's Counsel made the same appeal to me before this argument and said, will you contact DHS and will you get a new NTA instead of a reinstatement? And I'm perfectly happy to follow up with that and make that call, but it doesn't affect what's going on here. It's a completely separate matter, and DHS isn't going to take any sort of action. While there is something pending pursuant to this court's order, whether it be this appeal, whether it be a remand from this court to the board, that's going to actually delay the process and it's going to keep them from- Listen, we'll take care of it. I appreciate that, Your Honor. The matter's submitted. Okay. What's the custodial status of Mr. Delvani? I'll be happy to answer. There is one critical distinction between voluntary departure and reinstatement or removal, but to your question, he is free right now. The previous position by the DHS was they have a final order of removal and they were not going to release him. It's only because of overcrowding that he was released, and so they can reinstate that at any time and he'll be taken back into custody. The great difference, though, between reinstatement of removal and voluntary departure is the following. You know what? I think we've heard your argument. I asked you one question. You have a nice voice. We have a lot of cases today. You'll put me to sleep. Thank you, Your Honor. Thank you. Thank you. Thank you very much for those soothing words.
judges: Pregerson, Wardlaw, Leighton